MILTON ROFFMAN and OSCAR TUCKER, trading as Launderbest, Defendants Below, Appellants, v. WILMINGTON HOUSING AUTHORITY, a public body corporate and politic organized and existing under the laws of the State of Delaware, Plaintiffs Below, Appellees,

And the Following Improved Parcels of Land with the buildings thereon erected situate in the City of Wilmington, County of New Castle, and State of Delaware:

1. No. 735 Lombard Street, containing approximately 1760 square feet of land.

BRODSKY REALTY CO., INC., a corporation of the State of Delaware, owner of said properties, or of some part thereof or interest therein; and UNKNOWN OWNERS, Defendants Below, Appellees.

*(March* 6, 1962.)

SOUTHERLAND, Chief Justice; WOLCOTT, Justice, and MARVEL, Vice Chancellor, sitting.

*William D. Bailey, Jr.* (of Herrmann, Bayard,. Brill and Gallagher) for appellants.

*Thomas Herlihy, Jr.,* and *Morris Cohen* for Wilmington Housing Authority, appellee.

*J. A. Rosenthal* (of Cohen and Morris) for Brodsky Realty Co., Inc., appellee.

Supreme Court of the State of Delaware, No. 43, 1961.

WOLCOTT, J.:

The appellants, trading as Launderbest, leased from Brodsky Realty Co., Inc., appellee, the premises at 735 Lombard Street, Wilmington, in which they operated a laundry business.

The lease, *inter alia,* provided that all equipment installed by Launderbest for use in its business would remain its property with the privilege of removal upon the expiration of the lease. The lease further provided that in the event of the condemnation of the premises, or the

sale of the premises by Brodsky to a public authority, the lease would terminate. Upon such termination Launderbest waived "all claims against the lessor by reason of the * * * taking of the demised premises."

During the term of the lease Launderbest caused to be installed on the premises a one thousand gallon hot water boiler and a water softener and brine tank, both of which were attached to the concrete floor of the premises by a concrete bond. Launderbest also installed for its use in its business certain wooden shelving, a stairway and an electrical system. All of the above described items were so attached to the premises that removal from the premises was difficult and not economically feasible. All of the above described items were left on the premises by Launderbest upon the termination of the lease as hereinafter described.

Wilmington Housing Authority, appellee, instituted condemnation proceedings to obtain title to 735 Lombard Street, and deposited $14,800 in court. The condemnation proceedings did not join Launderbest as a tenant.

Thereafter, Brodsky, the owner, and the Authority agreed on a price for the entire fee of the premises in the amount of $16,200, upon payment of which Brodsky obligated itself to convey to the Authority the premises free and clear of all encumbrances and leases.

Thereafter, Launderbest moved to intervene in the condemnation proceedings on the ground that it had an interest in the premises for which it was entitled to be compensated. This motion to intervene was granted.

Brodsky thereupon moved for summary judgment against Launderbest on the ground that its lease had terminated by reason of the public taking, and that, accordingly, Launderbest had no compensable interest in the

premises. Judgment was entered against Launderbest by the Superior Court apparently on the basis that, by reason of the waiver provision of the lease, Launderbest had waived all its interest in the premises after the termination of the lease due to the condemnation, including the right to compensation for fixtures or equipment left on the premises after it vacated.

Summary judgment was entered on a showing of the terms of the lease. Launderbest has not had the opportunity to present evidence as to the value, if any, of the equipment and fixtures left by it on the premises.

There is no real dispute among these parties that as a matter of general law a tenant has the right to be compensated for the taking in condemnation of his interest in premises under lease to him. Generally speaking, upon condemnation of realty, a tenant is entitled to be compensated for the value of his leasehold interest together with any fixtures installed by him which, under the terms of the lease, remain his property. Even though ordinarily fixtures become part of the realty, nevertheless, if, under the terms of the lease, they remain the property of the tenant he is entitled to compensation for them. Nichols on Eminent Doman, § 5.81; Orgel, Valuation Under Eminent Domain, 2nd Ed., § 110; *Jackson v. State,* 213 N.Y. 34, 106 N.E. 758; In Re City of New York, 236 N.Y. 236, 176 N.E. 377; *Des Moines Wet Wash Laundry v. Des Moines,* 197 Iowa 1082, 198 N.W. 486; *People v. Klopstock* (Calif.), 151 P.2d 641.

 Even though, under the terms of a lease, a tenant retains ownership of fixtures installed by him with the right to remove them at the termination of the lease, the condemner may not raise as a defense the right of the tenant to remove the fixtures to avoid paying compensation for them. The reason is that the public authority

may not rely upon the provisions of a privately nego-
tiated contract between the landlord and tenant which
fixes rights as between themselves only. All fixtures hav-
ing become part of the realty are taken with it and must
be compensated for. Whether or not the public authority
wants the fixtures, this remains so, since they have been
taken. *U. S. v. Seagren,* 50 F.2d 333, 75 A.L.R. 1491; In
Re Property on North River, 103 N.Y.S. 908, aff'd. 189
N.Y. 508, 81 N.E. 1162. This result follows even though
the lease, itself, provides for its termination upon condem-
nation. Nichols on Eminent Domain, § 4.83; In Re City
of New York, supra.

While the foregoing is the general rule, Brodsky and
the Authority argue that the general rule does not apply
because of a waiver by Launderbest in the lease itself.
The court below accepted this view and entered judgment
against Launderbest.

The particular provision of the lease relied upon in
this respect is as follows:

"* * * the Lessee waives all claims against the
Lessor by reason of the complete or partial taking of
the demised premises and it is agreed that the Lessee
shall not be entitled to any notice whatsoever of the par-
tial or complete termination of this lease by reason of
the aforesaid."

Launderbest argues that the quoted provision of the
lease has no application in the present controversy for
the reason that it is not asserting any claim against Brod-
sky, the lessor. We are required, therefore, to determine
the meaning of the lease provision. If it was intended to
waive all claims against not only the lessor but a con-
demning authority, as well, then the judgment entered
below must be affirmed. If, on the other hand, it was in-

tended merely to settle questions as between lessor and lessee, then the judgment must be reversed and the case remanded for hearing to give the lessee an opportunity to prove the value of its property which has been taken.

This lease provides for two things in the event of termination. First, it reserves ownership to Launderbest of property installed by it upon the premises even though such property is so installed as to become fixtures to the realty. Second, the lease provides that upon condemnation of the premises or the sale by the lessor to a public authority, the lease shall terminate and thereupon the lessee waives all claims against the lessor.

We think, in construing the terms of this lease, that we must do so so as to give effect to all of its provisions if that is possible. If two constructions are possible, one of which denies effect to one provision of the lease and the other of which would give effect to all of the provisions, necessarily we must accept that which effectuates all of the lease provisions. This, we think, is the general rule regarding the interpretation of contracts. 3 Corbin on Contracts, § 546; 3 Williston on Contracts, Rev.Ed., § 619; 12 Am.Jur., Contracts, § 241.

Applying this principle, we think the plain meaning of the waiver covenant of this lease is that it is a waiver only of claims to be asserted solely against the lessor. To extend the waiver provisions beyond this would be to destroy the reservation to Launderbest of its ownership of the fixtures, and to enrich Brodsky in direct contradiction of the lease, itself. We must assume at this stage of the proceeding that the fixtures have a value which enhances the value of the realty, and which is reflected in the amount to be paid as compensation. To allow the owner, therefore, to take down the entire value of the enhanced realty would be to compensate it for

Launderbest's property, something to which it is not entitled.

 It follows, therefore, that it was error to enter judgment against Launderbest on the basis that it had waived its claim to compensation by the terms of the lease. Launderbest, of course, may not assert any claim against Brodsky; but it is not doing that. Its claim is solely against the Authority and is for just compensation for its property which has been taken from it.

Brodsky argues further that the purpose of the waiver provisions was to permit it to negotiate a private sale with a public authority and to convey free and clear of all claims. Whether or not this is a proper construction of the waiver provision of the lease, we do not have to decide. We note, however, that the waiver provisions in terms applies only when there has been a "taking of the demised premises." It does not therefore in terms apply to a negotiated sale. In any event, however, we think this is not a negotiated or private sale between Brodsky and the Authority since the whole matter was instituted by condemnation proceedings.

It therefore follows that, as a matter of law, the Authority is not entitled to raise as against Launderbest its waiver in the lease as a defense to the payment of compensation for any fixtures taken by the Authority. The case must therefore be remanded with instructions to permit Launderbest at a future hearing to offer evidence as to the value of its fixtures which have been taken by the Authority. Whether or not it will succeed in this undertaking remains to be seen.